UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DAVID LUCKEY and T. ZENON                  )
PHARMACEUTICALS, LLC (D/B/A                )
PHARMACY MATTERS)                          )
                                           )  Civil Action No.
      Plaintiffs,                        )
                                           )
vs.                                        )
                                           )
BLUE CROSS BLUE SHIELD                     )
OF MICHIGAN, a Michigan nonprofit          )
healthcare corporation                     )
                                           )
      Defendant.                         )

## COMPLAINT

Plaintiffs, by their undersigned attorneys, as and for their Complaint, allege:

## PARTIES

1.    Plaintiff David Luckey is a resident of the State of Michigan, residing at 3081 Bridgefield Drive, Ann Arbor, Michigan 48108.

2.    Plaintiff T. Zenon Pharmaceuticals, LLC ("Pharmacy Matters") is an Iowa limited liability company, with its principal place of business at 230 Scott Court, Suite 238, Iowa City, Iowa 52245.  For trade purposes, it does business under the name "Pharmacy Matters."  At all relevant times, Pharmacy Matters was a licensed pharmacy and, as such, was permitted to ship medicines to patients in states other than Iowa, including but not limited to Michigan.

3.    On information and belief, Defendant Blue Cross Blue Shield of Michigan ("BCBS MI" or "Defendant") is a Michigan corporation with a principal place of business in Southfield, Michigan.  As a licensee of the Blue Cross and Blue Shield Association ("BCBS Association"), BCBS MI underwrites various indemnity and managed care

health insurance products for national accounts, regional accounts and individual accounts. On information and belief, BCBS MI has its principal place of business at 600 East Lafayette Boulevard, Detroit, Michigan 48226.

4.      On information and belief, BCBS MI is the largest provider of commercial health insurance in Michigan, with policies covering more than three million Michigan residents – or more than 60% of the commercially insured population – which is more than nine times as many Michigan residents as its next largest competitor. In October 2010, the United States Department of Justice filed a civil antitrust action against BCBS MI alleging BCBS MI engaged in anti-competitive behavior. See United States of America and the State of Michigan v. Blue Cross Blue Shield of Michigan, No. 2:10-cv-14155-DPH-MKM (E.D. Mich.).

## JURISDICTION AND VENUE

5.      This Court has jurisdiction because this dispute involves a federal question under the Employee Retirement and Security Income Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (e) and (f), and pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and/or a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

7.     This action arises from BCBS MI's indefensible refusal to pay claims submitted by or on behalf of Plaintiffs for covered pharmacy services performed pursuant to written insurance contracts.  Plaintiff Luckey is the father of a minor child, who is a hemophiliac and who is referred to herein as "Master Luckey" to protect his identity.  Hemophilia is a life-threatening disease that requires those afflicted to use very expensive blood-clotting factor treatment ("Factor").  At all relevant times, Master Luckey had medical insurance coverage through BCBS MI pursuant to an insurance plan for which premiums were timely paid by Plaintiff Luckey.  Pharmacy Matters provides Factor and other medicines to patients throughout the United States, including to BCBS MI's insureds.  Pharmacy Matters has provided specialty pharmacy and health management care coordination services to patients since March 2006.

8.     Pursuant to a Contract Pharmacy Agreement, dated July 1, 2008, Pharmacy Matters entered into an agreement with Factor Health Management, LLC ("FHM"), the owner of FCS Pharmacy LLC (a specialty pharmacy) which was, at all relevant times, located in Boca Raton, Florida.  Pharmacy Matters acted as a non-exclusive distributor of medicines for which FHM was the distributor.  At all times relevant hereto, FHM or its affiliates held appropriate licenses to act as a wholesale pharmacy distributor in Iowa.

9.     Upon receipt of prescriptions from licensed physicians and confirmation with the appropriate insurance company of the patient's pre-certification for insurance payment purposes -- including whether the patient had reached any lifetime maximum for his insurance benefits -- Pharmacy Matters dispensed specialized medications and

3

other products, including Factor, directly to patients, including Master Luckey, who are participants or beneficiaries of health plans insured, underwritten and/or administered by BCBS MI. In connection with the dispensing of medication to patients, FHM and its contract pharmacies, including Pharmacy Matters, received an assignment from the patient for the purpose of collecting payment. The assignment signed by the patient permits Pharmacy Matters to recover directly from BCBS MI for services or products rendered. A copy of the assignment signed by Mr. Luckey – which is identical to the assignments signed by other BCBS MI insureds – is annexed hereto as Exhibit A. (Pharmacy Matters' business is akin to other specialty pharmacies and mail order and online pharmacies such as Medco, Caremark and CVS Online). On information and belief BCBS MI accepts hundreds or thousands of such assignments in the ordinary course of its business regarding its insureds.

10.     Typically, Pharmacy Matters submits a claim for the applicable charges to the appropriate insurance carrier for payment. In the event the patient's insurance carrier (the "home plan," in the terminology of the BCBS Association, and in this case BCBS MI) is located in a different geographic area than the provider (Pharmacy Matters), the BCBS Association asks the provider to submit the claim on-line to a local BCBS affiliate (the "host plan") in the terminology of the BCBS Association. On information and belief, for the claims that are the subject of this action, Wellmark, Inc. ("Wellmark")[1] an Iowa BCBS affiliate, "coordinated" payment for BCBS MI. But at all

---

[1]  On May 1, 2009, Pharmacy Matters commenced an action in the Iowa state District Court for Johnson County against Wellmark entitled T. Zenon Pharmaceuticals, LLP (d/b/a Pharmacy Matters v. Wellmark, Inc. Case No. LACV - 070675. Wellmark has denied that it has any liability for Factor dispensed to BCBS MI insureds.

4

relevant times, the payor on claims submitted by Pharmacy Matters, and which remain unpaid, is BCBS MI.

11.     Covered Services are those health care services or supplies to which an insured is entitled pursuant to a health insurance plan.  Pharmacy Matters provided Covered Services to BCBS MI's insureds as a non-participating provider. All Covered Services provided to BCBS MI's insureds by Pharmacy Matters were based on valid written insurance policies and valid pre-certifications issued by BCBS MI that, among other things, confirmed that the Covered Services to be provided to the patient would not cause the patient to exceed any lifetime maximum benefits on the patient's insurance policy.  All services provided to BCBS MI insureds – including Master Luckey – by Pharmacy Matters were "Covered Services" as that term is defined by BCBS MI. In addition, in every instance, and to the extent necessary, Pharmacy Matters received the necessary and required pre-certification before Covered Services were provided. At all relevant times, each BCBS MI insured was entitled to obtain his medicines from the licensed provider of his choice.

12.     In each case for which there are outstanding receivables, Defendant gave explicit confirmation of the patient's active status as an insured of Defendant or one of its BCBS Association affiliates and approved in advance the dispensing of the Factor, including confirming that the dispensing of the Factor would not cause the patient to exceed any lifetime maximum for benefits under the patient's insurance policy with BCBS MI.

13.     Despite the rendering by Pharmacy Matters of Covered Services and the timely submission of insurance claims for payment for such services, BCBS MI has

refused, without any basis in law or fact, to pay in excess of $1,175,335.89 in legitimate claims submitted by Pharmacy Matters during the period August, 2008 through November, 2008.   The claims submitted to BCBS MI for Factor dispensed to Master Luckey and other BCBS MI insureds and for which payment has not been made are:

| Invoice Number | Date of Service | Amount Billed | Amount Expected[2] | Amount Outstanding |
|---|---|---|---|---|
| 16014 | 11/14/2008 | $290,726.40 | $263,500.00 | $263,500.00 |
| 15984 | 11/7/2008 | 290,712.00 | 263,500.00 | 263,500.00 |
| 15986 | 11/8/2008 | 290,712.00 | 263,500.00 | 263,500.00 |
| 14652 | 7/31/2008 | 451,500.40 | 327,420.40 | 327,420.40 |
| 15479 | 10/4/2008 | 46,524.49 | 35,896.49 | 35,896.49 |
| 15813 | 11/1/2008 | 27,895.00 | 21,519.00 | 21,519.00 |
| | | | TOTAL: | $1,175,335.89 |

14.   Following Plaintiffs' contemporaneous and timely submission of the claims, Plaintiffs made constant demands – both verbally and in writing – for payment. No payments were made in response to the demands, and no reasons for non-payment were ever given.   By letter dated January 5, 2011, Plaintiffs asked, for the last time, for voluntary payment by BCBS MI in connection with the claims regarding Master Luckey (Exhibit B hereto).   In correspondence dated January 28, 2011, Diane Logsdon of BCBS MI's Appeals Unit responded by proposing a managerial conference regarding an appeal of BCBS MI's non-payment (Exhibit C hereto).   On February 16, 2011, a telephonic "appeal" hearing was held at the request of BCBS MI.   Ms. Logsdon, Tina Patsalis, a manager of BCBS MI's Appeals Unit, and Jesse Zatczynski, Esq., counsel to BCBS MI, attended the hearing on behalf of BCBS MI.   No further information was sought from Plaintiffs by BCBS MI, and no specific reason was given for the prior non-

---

[2] The "Expected Amount" is the amount that Pharmacy Matters expects to be paid based upon the reimbursement rate set by BCBS MI as of the date of service to the patient for the particular Covered Service.   The reimbursement rates set by BCBS MI differ depending on whether a pharmacy is a Participating or Non-Participating Provider.

6

payment of Plaintiffs' claims. BCBS MI's internal guidelines allowed BCBS MI 35 days to respond with the outcome of the appeal hearing, although BCBS MI promised a response within "one or two weeks." By March 23, 2011 – the 35th day after the telephonic appeal hearing – when BCBS MI had still not responded with a decision of the "appeal," it informed Plaintiffs that BCBS MI was still working on putting together the documentation needed to respond (Exhibit D hereto).

15.    By letter dated March 25, 2011 – two days after the deadline set by BCBS MI's own rules – BCBS  MI informed Plaintiffs that the appeal was denied and that BCBS MI would not pay the claims for Factor dispensed to Master Luckey (Exhibit E hereto). In the March 25 denial letter, BCBS MI did not assert any deficiency with the claims themselves. Rather, BCBS MI asserted that the claims were denied because Master Lucky had reached his lifetime maximum benefits, albeit well after the submission of the claim at issue here. If BCBS MI's assertion is indeed true, the only reason Master Luckey would have reached the lifetime maximum is because BCBS MI paid other, later-received claims, before it processed and paid the earlier-submitted claims that are the subject of this Complaint. For each claim that is referenced in this Complaint, Pharmacy Matters pre-certified the patient's eligibility under the respective patient's BCBS MI plan. One specific purpose of a pre-certification is to give the provider (in this case, Pharmacy Matters), assurance that the patient had not yet reached any lifetime maximums for benefits under the patient's insurance policy. But if BCBS MI is to be believed now, it sat on the claims at issue in this case, and then paid other claims instead, causing Pharmacy Matters to be denied a refund for the drugs it dispensed. If BCBS MI is to be believed now, the pre-certification that there were

sufficient insurance benefits available to pay the claims at issue was rendered meaningless notwithstanding Pharmacy Matters' reliance thereon.

16.     Pursuant to BCBS MI's own rules, when the managerial conference is finalized, remedies have been exhausted and an ERISA civil action is appropriate. BCBS MI informed Plaintiffs of this fact by facsimile on February 8, 2011 (Exhibit F hereto, p. 3). The managerial conference was finalized and held on February 16, 2011. Accordingly, Plaintiffs have exhausted their administrative remedies.

17.     As a result of being forced to file this lawsuit, Plaintiffs have incurred, and will continue to incur, significant attorneys' fees to force BCBS MI to do that which the law and insurance contracts at issue require it to do voluntarily.

**The BCBS MI Insurance Plan**

18.     BCBS MI issued insurance policies for medical insurance to Mr. Luckey and the other BCBS MI insureds (the "BCBS MI Plan") which were each effective during the relevant time period, August, 2008 through November, 2008.  The BCBS MI Plan specifically permitted Mr. Luckey and the other BCBS MI insureds to obtain Covered Services from both "in network" or "Participating" providers and "out-of-network" or "Non-Participating" providers and receive reimbursement from BCBS MI. Pursuant to the BCBS MI policy, Pharmacy Matters provided covered health products and services to BCBS MI's insureds and submitted insurance claims in accordance with BCBS Association policy to Wellmark which, in turn would submit the claims to BCBS MI in the case of BCBS MI's insureds.   Each BCBS MI insured who received Factor from Pharmacy Matters assigned his right to payment to Pharmacy Matters.  BCBS MI,

8

however, has breached the terms and conditions of the BCBS MI Plan by failing to timely pay Pharmacy Matters for the properly submitted claims at issue.

19.     As of the date of this Complaint, there was $1,175,335.89 in unpaid insurance claims properly submitted by Pharmacy Matters and pertaining to BCBS MI's insureds including but not limited to Plaintiff Luckey.  In clear violation of ERISA, every one of the subject claims has been outstanding for more than 60 days.  The oldest invoice was submitted on August 1, 2008.

20.     Under Michigan Law, a licensed insurer is required to, within 30 days after receipt of the claim, notify the insured of any additional materials that are required to be provided to the insurer as a "satisfactory proof of loss." MCL 500.2006(4).  Claims must be paid within 60 days after the insured provides the insurer with satisfactory proof of loss, or interest accrues at a rate of 12% per year.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (ERISA -- Wrongful Denial of Benefits)

21.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 20 of this Complaint.

22.     Plaintiff Luckey was a participant in the BCBS MI Plan, and Plaintiff Pharmacy Matters is an assignee of Plaintiff Luckey.

23.     Plaintiffs have been wrongfully denied benefits under the BCBS MI Plan, in the form of unpaid claims in the aggregate amount of at least $1,175,335.89, plus interest on all of the claims.

24.     Plaintiffs are entitled to bring a civil action to recover benefits due to them under the terms of the BCBS MI Plan, to enforce their rights under the terms of such

9

BCBS MI Plan, and/or to clarify their rights to future benefits under the terms of such Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B).

25.    Plaintiffs have exhausted their remedies to obtain their contractual benefits under the Plan.

26.    As a direct and proximate result of Defendant's wrongful denial of benefits, Plaintiffs have been injured and sustained damages therefrom.  Accordingly, Plaintiffs are entitled to recover the benefits improperly denied by Defendant, plus their attorneys' fees and interest.

27.    29 U.S.C. § 1132(g) (1) authorizes this Court to award reasonable attorneys' fees and costs of actions to the prevailing party in an ERISA action.

28.    As a result of Defendant's conduct, Plaintiffs have incurred significant attorneys' fees and costs in prosecuting this action and are entitled by law to an award of their attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (ERISA – Declaratory Relief)

29.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 28 of this Complaint.

30.    As is set forth above, Plaintiffs have been wrongfully denied benefits under the BCBS MI Plan, in the form of unpaid claims in the aggregate amount of at least $1,175,335.89, plus interest.

31.    Pursuant to 29 U.S.C. § 1132(a) (1) (B), Plaintiffs seek a declaration of rights under the BCBS MI Plan, against Defendant, to establish their rights to past and future benefits, to enforce their ERISA rights, and to collect their attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
### (ERISA – Injunctive Relief)

32.　Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 31 of this Complaint.

33.　As is set forth above, as a result of Defendant's wrongful denial of benefits to Plaintiffs under the BCBS MI Plan, Defendant has violated its obligations under ERISA.

34.　Pursuant to 29 U.S.C. § 1132(a) (3), Plaintiffs seek an injunction against Defendant enjoining it from either (i) denying, or (ii) placing a "hold" on any particular claim unless (a) the claim is deficient as a matter of law, or (b) Defendant has actual evidence of fraud associated with that claim.

## FOURTH CLAIM FOR RELIEF
### (Violation of Michigan Statutes § 500.2006)

35.　Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 34 of this Complaint.

36.　Defendant's failure and refusal to pay Plaintiffs' claims in a proper and timely manner is in violation of Section 500.2006 of the Michigan Statutes, which provides in relevant part:

> (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

*　　*　　*

11

(3) An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days . . .

\*         \*         \*

(4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. The interest shall be paid in addition to and at the time of payment of the loss . . .

37.     Since August, 2008, Plaintiffs have submitted $1,175,335.89 in claims pertaining to BCBS MI's insureds.   BCBS MI did not request any additional documentation pertaining to such claims, and any additional material that may have been requested by Wellmark was provided to Wellmark long ago.   Each of these claims are or have been more than 60 days past due the date and therefore BCBS MI has violated Section 500.2006 of the Michigan Statutes.

38.     By reason of the foregoing, Plaintiffs have sustained injury and damages therefrom and are entitled to interest in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Inducement)

39.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 38 of this Complaint.

40.     As set forth above, BCBS MI provided Pharmacy Matters with a pre-certification for the shipments of Factor dispensed by Pharmacy Matters to a BCBS MI insured.   The pre-certifications were representations by BCBS MI to Pharmacy Matters

that BCBS MI would pay the claims for the pre-certified shipments when submitted by Pharmacy Matters pursuant to a reimbursement schedule set by BCBS MI.

41.    BCBS MI intended for Pharmacy Matters to rely on BCBS MI's misrepresentations that the shipments of Factor that BCBS MI would pay the claims when properly submitted by Pharmacy Matters. In various communications with Pharmacy Matters, BCBS MI never revealed an intention, after the shipments were made, to deny Pharmacy Matters' claims or pay them in any way other than through the normal course of business.

42.    Pharmacy Matters did in fact rely on BCBS MI's representations and dispensed Factor worth $1,117,920.40 to Master Luckey.

43.    BCBS MI and/or Wellmark put a "hold" on claims for Factor submitted by Pharmacy Matters, as part of a fraudulent investigation that dragged on for several years without uncovering any evidence of wrongdoing by Pharmacy Matters. BCBS MI now asserts that other claims submitted by other pharmacies in respect of drugs dispensed to Master Luckey were processed and paid while the "hold" on Pharmacy Matters claims was in place, even though those other claims were for dates of service well after the dates on which Pharmacy Matters dispensed Factor to Master Luckey. As a result of its own wrongdoing, BCBS MI has now asserted that Master Luckey has reached the maximum lifetime benefits available under his BCBS MI policy after it told Pharmacy Matters that it would be paid for its shipments

44.    BCBS MI intended that Pharmacy Matters rely on its representations that Plaintiff Luckey had good and valuable insurance coverage such that Pharmacy Matters good dispense highly expensive drugs to Master Luckey. BCBS MI made such

13

representations to Pharmacy Matters on six separate occasions, all for the purpose of having the insurance benefit it was by law obligated to provide to Master Luckey satisfied. In response to the announcement of this lawsuit, BCBS MI has now asserted that its own representations to Pharmacy Matters were either (a) false when made, or (b) subject to after-the-fact qualification, that would render the representations false. The positions taken by BCBS MI are inconsistent and contradictory and reveal its intentions to injure Plaintiffs and perpetrate a fraud upon them.

45.     Defendant's representations and omissions were deliberate, knowing and intentional/

46.     By reason of the foregoing, BCBS MI is liable to Pharmacy Matters for fraudulent inducement, and for actual damages arising therefrom in the amount of $1,117,920.40, plus punitive damages, attorneys' fees, interest and costs.

47.     BCBS MI's fraudulent inducement of Pharmacy Matters has thus far cost Pharmacy Matters $1,117,920.40 in unpaid claims, plus significant attorneys' fees and costs expended chasing BCBS MI for payment of the claims.

## SIXTH CLAIM FOR RELIEF
### (Promissory Estoppel)

48.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 47 of this Complaint.

49.     BCBS MI provided Pharmacy Matters with a pre-certification for the shipments of Factor dispensed by Pharmacy Matters to a BCBS MI insured. The pre-certifications were promises by BCBS MI to Pharmacy Matters that the patients were validly insured and that the Factor to be dispensed would not cause the patient to

exceed his lifetime maximum for benefits under his insurance policy and that Pharmacy

Matters would be paid for the drug payment and reimbursed as set by BCBS MI.

50.     BCBS MI knew that Pharmacy Matters sought pre-certifications because:

(a) BCBS MI <u>required</u> it to, and (b) it intended to dispense expensive Factor medications

to the patients pursuant to valid prescriptions. Pharmacy Matters did indeed dispense

the expensive Factor medications to its patients in reliance on BCBS MI's promises.

51.     By reason of the foregoing, BCBS MI is liable to Plaintiffs for promissory

estoppel and for actual damages in the amount of $1,117,920.40, for punitive damages

in an amount to be determined at trial, interest, attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in

their favor and against BCBS MI as follows:

A.     On the First Claim for Relief, actual damages in an amount to be determined at trial, but in no event less than $1,175,335.89, plus interest as allowed by law;

B.     On the Second Claim for Relief, a declaration that (1) Plaintiffs are entitled to be paid for the unpaid claims that are the subject of this action; and (2) Plaintiffs are entitled to their reasonable attorneys' fees and costs incurred in this action;

C.     On the Third Claim for Relief, an order enjoining Defendant from either (i) denying, or (ii) placing a "hold" on any particular claim unless (a) the claim is deficient as a matter of law or (b) Defendant has actual evidence of fraud associated with that claim;

D.     On the Fourth Claim for Relief, interest in an amount to be determined at trial;

E.     On the Fifth Claim for Relief, actual damages in an amount to be determined at trial, but in no event less than $1,117,920.40, plus punitive damages and interest as allowed by law;

F.     On the Sixth Claim for Relief, actual damages in an amount to be determined at trial, but in no event less than $1,117,920.40, plus punitive damages and interest as allowed by law;

G.    Awarding Plaintiffs the costs of this proceeding, including, but not limited to, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1); and

H.    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated: April 8, 2011                                      Respectfully submitted,

                                                          ABBOTT NICHOLSON, P.C.
                                                          By:    /s/ Timothy J. Kramer (P 36223)
                                                                 300 River Place, Suite 3000
                                                                 Detroit, Michigan 48207-4225
                                                                 (313) 566-2500 (telephone)
                                                                 (313) 566-2502 (facsimile)
                                                                 tjkramer@abbottnicholson.com

                                                          PADUANO & WEINTRAUB LLP
                                                          By:    /s/ Anthony Paduano
                                                                 Anthony Paduano
                                                                 Paduano & Weintraub LLP
                                                                 1251 Avenue of the Americas
                                                                 Ninth Floor
                                                                 New York, New York 10020
                                                                 (212) 785-9100 (telephone)
                                                                 (212) 785-9099 (facsimile)
                                                                 ap@pwlawyers.com
                                                                 Attorneys for Plaintiffs

255435

16