UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LUCKEY and T. ZENON
PHARMACEUTICALS, LLC (D/B/A
PHARMACY MATTERS)

      Plaintiffs,                    Civil Action No. 5:11-cv-11500-JCO-MJH
                                            Hon. John Corbett O'Meara

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN, a Michigan nonprofit healthcare
corporation,

      Defendant.

---

**DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

---

      Defendant Blue Cross Blue Shield of Michigan ("BCBSM"), by and through counsel, hereby moves for an order dismissing Plaintiff's Complaint for lack of subject matter jurisdiction and other grounds discussed in its Brief in Support. In support of this Motion, BCBSM relies upon the argument, authorities and attachments set out in the accompanying Brief in Support.

      Counsel for Plaintiffs has been advised of this Motion and has refused to stipulate to the relief sought.  Oral argument is requested on this Motion.

                          Respectfully Submitted,

                          /s/  Leo A. Nouhan
                          Leo A. Nouhan (P30763)
                          Assistant General Counsel
                          BLUE CROSS BLUE SHIELD OF MICHIGAN
                          600 E. Lafayette Blvd., Suite 1925
                          Detroit Michigan 48226
                          Telephone: (313) 983-2554
                          Email: lnouhan@bcbsm.com

## PROOF OF SERVICE

I hereby certify that on October 26, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will notify all counsel of record.

Respectfully Submitted,

/s/  Leo A. Nouhan
Leo A. Nouhan (P30763)
Assistant General Counsel
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 E. Lafayette Blvd., Suite 1925
Detroit Michigan 48226
Telephone: (313) 983-2554
Email: lnouhan@bcbsm.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LUCKEY and T. ZENON
PHARMACEUTICALS, LLC (D/B/A
PHARMACY MATTERS)

      Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN, a Michigan nonprofit healthcare
corporation,

      Defendant.

Civil Action No. 5:11-cv-11500-JCO-MJH
Hon. John Corbett O'Meara

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT**

---

**Table of Contents**

**Page**

I.   PRELIMINARY STATEMENT ............................................................................... 1

II.   STATEMENT OF FACTS ................................................................................... 2

   A.   Plaintiff Luckey's Health Plan Coverage. .......................................................... 2

   B.   The BCBSM Community Blue Certificate. ....................................................... 3

   C.   Luckey received hemophilia factor product from Pharmacy Matters, an out of state participating specialty provider contracted with Wellmark. ....................................... 4

   D.   Pharmacy Matters claims were submitted to Wellmark through the Blue Card Program.. 5

   E.   Luckey exhausts his benefit coverage under BCBSM Community Blue. .......................... 7

   F.   Pharmacy Matters and Luckey appeal BCBSM denial of payment. ................................ 7

   G.   Plaintiff Luckey is no longer a participant of an ERISA covered health plan................... 8

III.   STANDARD OF REVIEW ................................................................................... 9

IV.   ARGUMENT ................................................................................................... 10

   A.   The Complaint should be dismissed because the Plaintiffs lack standing........................ 10

     1.   The claims brought by Pharmacy Matters must be dismissed because it lacks statutory standing under ERISA. ....................................................................................... 11

     2.   Pharmacy Matters does not have derivative standing to assert its claim for ERISA benefits because of the unambiguous anti-assignment clause................................................ 12

     3.   Luckey Does Not Have Statutory Standing under ERISA. .......................................... 15

     4.   The Complaint must be dismissed because Plaintiff Luckey cannot establish constitutional standing............................................................................................... 16

     5.   Luckey's lack of standing destroys the asserted derivative standing of Pharmacy Matters. ......................................................................................................... 19

     6.   Plaintiffs do not have standing to seek declaratory or equitable  relief since Plaintiff Luckey's current health plan is not covered by ERISA. ...................................... 20

   B.   The Complaint should be dismissed because the Plaintiff Pharmacy Matters has a pending case in Iowa state court involving the same disputed claims. ..................................... 21

   CONCLUSION..................................................................................................... 25

<u>**Table of Authorities**</u>

<u>**Page**</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) .......................................................... 10

*Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)..................................... 10

*Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) ........... 19

*Bye v. Nationwide Mut. Ins. Co.*, 733 F.Supp.2d 805, 815 (E.D. Mich. 2010) ........................... 10

*Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 618 (6th Cir. 2002) .......................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................................................................... 10

*Central States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (citing *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ......... 17

*Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996)......................................................................... 9

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ...................................................................................................................... 21

*Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1102, 1109 (6th Cir. 1995) ................................. 9

*Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991)..................... 12

Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132 ...................................... 1

*Grindstaff v. Green*, 945 F. Supp. 540, 544 (E.D. Tenn. 1996)...................................................... 9

*Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002) ............................ 18

*Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003) ................................. 17

*Id.* (quoting *Rettig v. Kent City School Dist.,* 788 F.2d 328, 330 (6th Cir.), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986)) ............................................................................ 19

*Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) .................................................................................... 17

*LaRocca v. Borden, Inc.*, 276 F.3d 22, 25 (1st Cir. 2002) ........................................................... 15

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 15-16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ...................................................................................................................... 22

*N.I.P.P. Royal Oak, LLC v. City of Royal Oak*, 470 F. Supp. 2d 784, 788 (E.D. Mich. 2007) (citing *Vermont Agency of Natural Res's v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) .................................................................................................................. 19

*Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) .................................. 13

*Perry v. United Food and Commercial Workers*, 64 F.3d 238 (6th Cir. 1995) ............................ 15

*Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir.1998) (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989)) ................................................................ 22

*Romine v. Compuserve Corp.,* 160 F.3d 337, 340-341 (6th Cir.1998) ................................ 22

*Romine,* 160 F.3d at 341 (citing *LaDuke v. Burlington Northern R.R. Co.,* 879 F.2d 1556, 1560 (7th Cir.1989)) .......................................................................................... 23

*Romine,* 160 F.3d at 341 (quoting *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 694 (7th Cir.1985)) .......................................................................................... 23

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ........................ 9

*Select Specialty Hosp. v. National City Bank Health & Welfare Plan, et al.*, No. 1:07-cv-349, 2008 WL 268901 (W.D. Mich. Jan 25, 2008) ................................................ 13

*Specialty Hosp. v. National City Bank Health & Welfare Plan, et al.* .......................... 13

*T. Zenon Pharmaceuticals, LLC (d/b/a Pharmacy Matters) and Shane Kelley v. Wellmark, Inc. and Wellmark Health Plan of Iowa, Inc.,* Docket No. LACV070675 (Iowa District Court, Johnson County) ................................................................................................ 8

*Trinity Health-Michigan v. Blue Cross Blue Shield of South Carolina* ................................ 13

*Trinity Health-Michigan v. Blue Cross Blue Shield of South Carolina*, 408 F. Supp. 2d 482, 485 (W.D. Mich. 2005) ......................................................................................... 12

*Trinity Health-Michigan v. Blue Cross Blue Shield of South Carolina*, 408 F.Supp.2d 482, 486 (W.D. Mich. 2005) ......................................................................................... 13

*Ward v. Alternative Health Delivery Systems, Inc. et al.*, 261 F.3d 624, 627 (6th Cir. 2001) ...... 11

**Statutes**

29 U.S.C. § 1002(7) ............................................................................................. 11

29 U.S.C. § 1002(8) ............................................................................................. 11

29 U.S.C. § 1132(a) ............................................................................................. 11

29 U.S.C. § 1132(a)(1)(B) ................................................................................ 11

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") .......... 2

ERISA, 29 U.S.C. § 1002(1) ........................................................................... 20

Section 502 of ERISA, 29 U.S.C. § 1132 ........................................................ 12

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) ................................. 19, 20

Section 502(a)(2) of ERISA, § 29 U.S.C. 1132(a) .......................................... 17

Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ................................................... 20

Section 502, 29 U.S.C. § 1132 ....................................................................... 21

**Rules**

Fed.R.Civ.P. 56(b) ........................................................................................ 10

Fed.R.Civ.P. 56(e) ........................................................................................ 10

## List of Exhibits

Exhibit 1       Plaintiffs' Complaint

Exhibit 2       Community Blue Group Benefits Certificate

Exhibit 3       Entity Agreement between Wellmark and Pharmacy Matters

Exhibit 4       Service Agreement/Assignment of Benefits

Exhibit 5       Affidavit of Michael F. Stein

Exhibit 6       BlueCard Policy

Exhibit 7       Inter-Plan Programs Processing Standards

Exhibit 8       Letter from Michelle Fullerton to David Luckey, August 7, 2009

Exhibit 9       Letter from Diane Logsdon to Lori Vinciguerra, March 25, 2011

Exhibit 10      Summons and Complaint T. Zenon Pharmaceuticals et al v Wellmark

Exhibit 11      Affidavit of Diane Logsdon

Exhibit 12      *Select Specialty Hosp. v. National City Bank Health & Welfare Plan, et al.*, No. 1:07-cv-349, 2008 WL 268901 (W.D. Mich. Jan 25, 2008)

Exhibit 13      Order Denying Motion to Strike and Motion to Disqualify Counsel, and Granting Stay in This Case

I.     **PRELIMINARY STATEMENT**

While Plaintiffs have pled this as a claim for benefits and other rights under the

Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132, this case is really

nothing more than a thinly veiled collection action by the Plaintiff, T. Zenon Pharmaceuticals,

LLC (d/b/a Pharmacy Matters) ("Pharmacy Matters") seeking payment for contested services

that are currently the subject of a parallel lawsuit by Pharmacy Matters against Wellmark, Inc.

(a/k/a Blue Cross Blue Shield of Iowa) ("Wellmark").  In an effort to circumvent the legal

proceedings pending in Iowa, Pharmacy Matters initiated this lawsuit, using Plaintiff Luckey as a

vehicle to invoke ERISA jurisdiction in order to compel Defendant, Blue Cross Blue Shield of

Michigan ("BCBSM") to pay for services that neither Plaintiff Luckey nor BCBSM are legally

obligated to pay.

While the lawsuit is crafted as a claim for benefits under ERISA, there is no basis for this

court to exercise federal jurisdiction over this case because:

1.     Pharmacy Matters is not an ERISA plan participant or beneficiary;

2.     The assignment from Plaintiff Luckey to Pharmacy Matters is expressly

prohibited by the BCBSM health plan Certificate and therefore unenforceable;

3.     Plaintiff Luckey has no claim against BCBSM since he received benefits due him

under his BCBSM coverage and has no legal obligation to pay Pharmacy Matters for the services

by virtue of the agreement between Pharmacy Matters and Wellmark.  There is no actual case or

controversy between Plaintiff Luckey and BCBSM; and

4.     Plaintiff Luckey is no longer a participant in an ERISA covered health plan so this

court has no jurisdiction in law or equity, to interpret, clarify or enforce Luckey's rights under

his current BCBSM non-group, individual health care policy.

Pharmacy Matters filed suit against Wellmark in the Iowa State court in 2009 seeking payment of the same disputed claims that are at issue in the instant case. In the meantime, Pharmacy Matters initiated this lawsuit invoking federal ERISA jurisdiction as a pretext to obtain payment from BCBSM. The actions of the Plaintiffs in this case are duplicative, amount to forum shopping and constitute an abuse of the judicial process.

## II.   STATEMENT OF FACTS

### A.   Plaintiff Luckey's Health Plan Coverage.

Plaintiff David Luckey ("Luckey") and his minor child ("Master Luckey") are Michigan residents who had healthcare coverage through an insured employer-sponsored group health plan (the "Plan"). **Exhibit 1**, Plaintiffs' Complaint, ¶ 7, at 3. At the time of the disputed claims at issue in this litigation, Luckey and his dependent son were covered by a contract with Defendant Blue Cross Blue Shield of Michigan ("BCBSM") providing prepaid health insurance. This employer sponsored group health plan was governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"). **Exhibit 1**, ¶ 5, at 2. The Plan chose a particular BCBSM benefit certificate for its health care coverage – the Community Blue Group Health Certificate (the "Certificate"). The Certificate describes the covered benefits, required co-payments and deductibles as well as benefit exclusions and limitations. **Exhibit 2**, Relevant portions of Community Blue Certificate.

Master Luckey is a hemophiliac. In order to treat his hemophilia, he was required to undergo treatment which involves the administration of a blood factor product ("Factor") to assist with the clotting of his blood. On July 31, 2008, November 7, 2008, November 8, 2008, and November 14, 2008, prescriptions for Factor were supposedly submitted to Pharmacy Matters for dispensation to Plaintiff Luckey.

2

**B.**      **The BCBSM Community Blue Certificate.**

The Community Blue Certificate contains the following provisions that are relevant to these proceedings.

Section 2 *What You Must Pay,* at page 2.5, there is a provision for **Lifetime and Annual Maximums** which states as follows:

> The lifetime maximum under this certificate is five million dollars ($5,000,000).  This is the most we will pay for a member's covered services (except for the separate lifetime maximums for specified human organ transplants, *see* page 3.21).
>
> **NOTE:** Any claims paid under any BCBSM certificate with a similar lifetime maximum are applied to this five million dollar limit.
>
> Once a member has met the lifetime maximum, we will no longer pay claims for that member.  We will continue to pay claims for other members on the contract until each member has met the lifetime maximum.  **Exhibit 2**, page 2.5**.**

Section 4 *Coverage For Physicians and Other Professional Provider Services*, at page 4.27, there is a provision for **How Physician And Other Professional Provider Services Are Paid - Panel Providers** which states:

> When you receive covered services from a panel provider, we will pay our approved amount directly to the provider.  You are responsible only for the copayments described in this certificate. **Exhibit 2**, page 4.27

Section 4 *Coverage For Physicians and Other Professional Provider Services*, at page 4.32, there is a provision for **How Physician And Other Professional Provider Services Are Paid - BlueCard PPO Program** which states:

> The Host Plan can pay provider specialties recognized within the Host Plan's state (even if BCBSM does not contract with the particular provider specialty).  If the Host Plan contracts with a provider specialty and the services being performed by this

3

provider are covered under the terms of the BCBSM policy, then this provider specialty can be paid.  **Exhibit 2, page 4.32**

Section 6 *General Conditions of Your Contract,* at page 6.1 there is a provision regarding **Assignment** which states as follows:

> The services provided under this certificate are for your personal benefit and cannot be transferred or assigned.  Any attempt to assign this contract will automatically terminate all your rights under it.  No right to payment from [BCBSM], claim or cause of action against [BCBSM] may be assigned by you to any provider. [BCBSM] will not pay any provider except under the terms of this contract.  **Exhibit 2**, page 6.1**.**

Section 6 *General Conditions of Your Contract,* at page 6.1 there is a provision regarding **Care and Services that are Not Payable** which states as follows:

> We do not pay for the following care or services:
>
> Those for which you legally do not have to pay of for which you would not have been charged if you did not have coverage under this certificate.  **Exhibit 2**, page 6.1**.**

**C.   Luckey received hemophilia factor product from Pharmacy Matters, an out of state participating specialty provider contracted with Wellmark.**

Pharmacy Matters is a provider of the clotting factor and has an exclusive agreement ("Entity Agreement") with Wellmark.  **Exhibit 3** Entity Agreement**.**  The Entity Agreement makes Pharmacy Matters a Wellmark participating provider and eligible to service individuals who have Blue Cross Blue Shield coverage through Wellmark or other Blue Cross Blue Shield affiliates.  Such individuals are referred to as "members."  It is undisputed that Pharmacy Matters does not have <u>any</u> contract with BCBSM.

In the course of providing services to Master Luckey, Pharmacy Matters secured an assignment from Master Luckey, assigning to Pharmacy Matters all right to reimbursement that is payable to Master Luckey or to bill and receive payment from Master Luckey's insurance

4

company for services rendered by Pharmacy Matters.  *See* Service Agreement/Assignment of Benefits, dated May 9, 2006, attached to Plaintiffs' Complaint as Exhibit A and attached hereto as **Exhibit 4.**

Since his enrollment in the non-group individual BCBSM health care plan on January 1, 2011, Master Luckey has obtained his Factor from other sources and no services by Pharmacy Matters have been rendered to Master Luckey.

According to its Entity Agreement with Wellmark, Pharmacy Matters agreed to submit claims for covered services to Wellmark, accept payment from Wellmark as payment in full for covered services, and not bill members for covered services (except for copayments, deductibles, and coinsurance).  For claims involving individuals with their health care coverage through other Blue Cross Blue Shield affiliates, Pharmacy Matters agreed to abide by the terms of the Blue Cross Blue Shield Association out of area or reciprocal programs and to submit claims to Wellmark for Wellmark's coordination with the appropriate Plan in adjudicating the claim according to the person's benefit certificate.  This out of area or reciprocal program is commonly referred to as the BlueCard Program ("BlueCard").  *See* Affidavit of Michael F. Stein[1], attached as **Exhibit 5.**  *See* also Entity Agreement, **Exhibit 3**, §§ 6.3 and 8.2.

### D.    Pharmacy Matters claims were submitted to Wellmark through the Blue Card Program.

After Master Luckey received his Factor prescriptions, Pharmacy Matters billed Wellmark for the services provided.  Because Master Luckey's healthcare coverage is administered by BCBSM and Pharmacy Matters is an Iowa provider, Master Luckey's prescription claims were submitted to Wellmark through, and subject to, BlueCard.  BlueCard

---

[1] This affidavit was submitted by Pharmacy Matters in the Iowa litigation is support of its claim for injunctive relief.

enables BCBSM members to obtain healthcare services from providers in another Blue Cross Blue Shield plan's service area. *See* Inter-Plan Programs Policies and Provisions, § 1.01, at 9, attached as **Exhibit 6**.

Through a Blue Cross Blue Shield Association-sponsored communications network, BlueCard equips providers with one source for claims submission, claims payment, adjustments, and issue resolution for patients from other Blue Cross Blue Shield plans. **Exhibit 6**, § 1.01, at 9. For example, when a BCBSM member receives medical services from an Iowa provider, Wellmark will process the claim according to its contract with the provider and reimbursement policy. Then, Wellmark forwards the approved amount of the claim to BCBSM for processing according to the member's contract benefits and BCBSM's medical policy. If the claim is for a covered service under the applicable BCBSM certificate, the provider will be paid the amount determined by Wellmark.

Per the requirements of BlueCard, Wellmark processed all four of the Factor claims and eventually sent them to BCBSM. After the July 31, 2008 claim was sent to BCBSM, Wellmark flagged the Pharmacy Matters claims as ineligible for payment due to the initiation of a fraud investigation by Wellmark. Wellmark suspected that the prescriptions were fraudulent or failed to comply with its reimbursement guidelines. According to BlueCard, when a provider's claims are flagged due to a fraud investigation, the Blue Cross Blue Shield plan where the member resides is prohibited from making payment on the flagged claims. *See* Inter-Plan Programs Processing Standards, § 17.01, at 96, attached as **Exhibit 7.**

Because of the Wellmark fraud investigation, BlueCard prohibited BCBSM from paying the July 31, 2008 claim. **Exhibit 7**, at 97. Likewise, Wellmark notified BCBSM that the November 7, 8, and 14 claims were also being flagged with a message-code signifying that

6

Pharmacy Matters was under a fraud investigation. Because Wellmark sent the November 7, 8, and 14 claims with such codification, BlueCard prohibited BCBSM from paying these claims. **Exhibit 7**, at 97. Ultimately, while Master Luckey received the Factor from Pharmacy Matters, the July 31, November 7, November 8, and November 14 claims for reimbursement were pended and were not paid.

      **E.**     **Luckey exhausts his benefit coverage under BCBSM Community Blue.**

While payment for the disputed Factor claims was pending, other claims for services rendered to Master Luckey by other health care providers were submitted to BCBSM for payment. The amounts paid by BCBSM on those claims continued to contribute to Master Luckey's five million dollar lifetime maximum contained in the Community Blue Certificate. On August 7, 2009, Luckey received a letter from BCBSM stating, "This is to inform you that [Master] Luckey has reached the ($5,000,000.00) lifetime benefit maximum for healthcare benefits. As of (08/07/09), and based on paid claims data files as of (08/07/09), ($5,000,000.00) has been paid to health care providers for services you have received." *See* Letter from Michelle Fullerton to David Luckey, August 7, 2009 attached as **Exhibit 8**. Subsequently, additional letters were sent to Plaintiff Luckey advising him that the lifetime maximum had been exceeded.

      **F.**     **Pharmacy Matters and Luckey appeal BCBSM denial of payment.**

Even after these letters were sent, Pharmacy Matters made multiple requests of BCBSM for payment of the four disputed Factor claims. BCBSM was prohibited from making payment for the four Factor claims because of Wellmark's fraud investigation and, as a result of Master Luckey exhausting his five million dollar lifetime maximum; BCBSM had no liability to pay any claims once the lifetime maximum was reached.

Master Luckey appealed BCBSM's decision not to pay additional claims due to the triggering of the lifetime maximum at a Managerial Level Conference ("MLC") on February 16, 2011. On March 25, 2011, BCBSM sent a letter to Luckey and his attorney informing them that BCBSM was upholding its decision to deny payment of the four disputed Factor claims because Master Luckey had exhausted his five million dollar lifetime maximum. *See* Letter from Diane Logsdon to Lori Vinciguerra, March 25, 2011, attached as **Exhibit 9**.

The exhaustion of Master Luckey's lifetime maximum is of little consequence. Pharmacy Matters has not and cannot sue Master Luckey for payment because of the restrictions and requirements of its Entity Agreement with Wellmark. BCBSM has no independent obligation to pay Pharmacy Matters because of the provisions of the Blue Card Program which insulates BCBSM from reimbursement disputes between Wellmark and its participating providers, like Pharmacy Matters.

Despite its contractual obligation to seek payment exclusively from Wellmark and its lack of any contract with BCBSM, Pharmacy Matters and David Luckey filed suit against BCBSM seeking payment in the amount of $1,117,920.40 for the disputed Factor claims. It is undisputed that Pharmacy Matters also has an action pending against Wellmark seeking payment for the same four disputed Factor claims in the case of *T. Zenon Pharmaceuticals, LLC (d/b/a Pharmacy Matters) and Shane Kelley v. Wellmark, Inc. and Wellmark Health Plan of Iowa, Inc.*, Docket No. LACV070675 (Iowa District Court, Johnson County) ("Iowa Litigation") **Exhibit 10**.

### G. <u>Plaintiff Luckey is no longer a participant of an ERISA covered health plan.</u>

Master Luckey's coverage under this ERISA Plan terminated in 2009 after he reached the five million dollars lifetime maximum benefit under the Community Blue Benefit Certificate.

8

As of January 1, 2011, Plaintiff Luckey and his son, enrolled in a contract with BCBSM for individual, non-group prepaid health care. The current Certificate is Flexible Blue II 1500 Non Group Plan. Plaintiff Luckey and his son, Master Luckey, are not currently participants nor beneficiaries in a health plan subject to ERISA. *See* Affidavit of Diane Logsdon, attached as **Exhibit 11**.

## III.   <u>STANDARD OF REVIEW</u>

In deciding whether to grant a Rule 12(b)(6) motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). Nevertheless, this standard "require[s] more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1102, 1109 (6th Cir. 1995). A complaint must contain either direct or inferential allegations with respect to all the material elements in order to withstand a Rule 12(b)(6) motion. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

Further, in reviewing a motion to dismiss under Rule 12(b)(6), a court may consider outside materials either attached to the complaint, incorporated into the complaint by reference, or materials to which judicial notice may be taken, without converting the motion to dismiss into a motion for summary judgment. *Grindstaff v. Green*, 945 F. Supp. 540, 544 (E.D. Tenn. 1996) (on 12(b)(6) motion, "the Court may consider the documents presented by Defendants because Plaintiffs routinely refer to them throughout the Complaint," even though they were not attached to the complaint), aff'd 133 F.3d 416 (6th Cir. 1998).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Bye v. Nationwide Mut. Ins. Co.*, 733 F.Supp.2d 805, 815 (E.D. Mich. 2010).

The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## IV.   ARGUMENT

### A.   The Complaint should be dismissed because the Plaintiffs lack standing.

Pharmacy Matters does not have standing, either directly or derivatively, to bring this lawsuit against BCBSM. ERISA requires that only plan participants or beneficiaries can assert a claim for benefits under Section 502, U.S.C. § 1132(a). Pharmacy Matters is neither a participant nor a beneficiary and therefore lacks direct standing under ERISA to pursue any claim for benefits against BCBSM. In addition, because Luckey's BCBSM Certificate contains an enforceable and unambiguous anti-assignment clause, Luckey's assignment of rights to Pharmacy Matters is invalid and precluded from being enforced. As a result, Pharmacy Matters

10

lacks derivative standing to bring this lawsuit.  Finally, Luckey is not legally obligated to reimburse Pharmacy Matters for the Factor he received due to the final denial of the claims by Wellmark.  His claim for benefits from BCBSM is moot.  Therefore, the claims of both Plaintiffs must fail because neither of the Plaintiffs possess the requisite statutory standing under ERISA.

### 1.   The claims brought by Pharmacy Matters must be dismissed because it lacks statutory standing under ERISA.

Pharmacy Matters does not have standing to bring a claim against BCBSM because it is not an ERISA-plan participant or ERISA-plan beneficiary.  Claims under ERISA are limited to four categories of persons: participants, beneficiaries, plan fiduciaries, and the Secretary of Labor.  *See* 29 U.S.C. § 1132(a).  Furthermore, only two parties have standing to bring a claim for benefits from an ERISA plan: participants and beneficiaries.  29 U.S.C. § 1132(a)(1)(B).  ERISA defines a "participant" as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).  A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

In *Ward v. Alternative Health Delivery Systems, Inc. et al.*, 261 F.3d 624, 627 (6th Cir. 2001), a chiropractor filed various claims against a Health Maintenance Organization ("HMO") and the HMO's specialty care manager, including, *inter alia*, an ERISA claim seeking benefits. *Id.* at 625-26.  The Sixth Circuit Court of Appeals held that the chiropractor did not have

11

standing to bring her ERISA claims.  *Id.* at 627.  The Sixth Circuit reasoned that the chiropractor was neither an ERISA-plan participant nor an ERISA-plan beneficiary.  *Id.*

In the present case, Pharmacy Matters, like the chiropractor in *Ward*, is neither an ERISA-plan participant nor an ERISA-plan beneficiary.  *See Id.*  Therefore, Pharmacy Matters lacks direct standing to seek relief under Section 502 of ERISA, 29 U.S.C. § 1132, relating to a claim for benefits; clarification of any rights under the applicable health plan or equitable relief regarding future benefits or reimbursement  from BCBSM.

> **2.** **Pharmacy Matters does not have derivative standing to assert its claim for ERISA benefits because of the unambiguous anti-assignment clause**

Because Pharmacy Matters does not have direct standing, it may only sue under ERISA if it has derivative standing through a valid assignment of rights from Luckey.  According to Plaintiffs' Complaint, Luckey assigned his right of reimbursement to Pharmacy Matters.  *See* **Exhibit 1**, ¶9, page 4.  However, Luckey's BCBSM certificate specifically prohibited assignment of any right to payment, claim, or cause of action to a provider (*i.e.*, Pharmacy Matters).  Therefore, the assignment of rights is invalid and non-binding on BCBSM.  Consequently, Pharmacy Matters lacks derivative standing to sue BCBSM.

An entity not otherwise qualifying as a participant or beneficiary may obtain derivative standing by obtaining a valid assignment of rights under a plan from a participant or beneficiary.  *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991).  However, ERISA does not prohibit anti-assignment clauses in employee welfare benefits plans.  *Trinity Health-Michigan v. Blue Cross Blue Shield of South Carolina*, 408 F. Supp. 2d 482, 485 (W.D. Mich. 2005).  Furthermore, an unambiguous anti-assignment clause in an ERISA benefit plan invalidates an otherwise valid assignment from an insured to a healthcare provider, which

precludes the healthcare provider from enforcing the assignment.  *Trinity Health-Michigan v. Blue Cross Blue Shield of South Carolina*, 408 F.Supp.2d 482, 486 (W.D. Mich. 2005) (decision vacated through joint motion of parties and case was dismissed with prejudice); *Select Specialty Hosp. v. National City Bank Health & Welfare Plan, et al.*, No. 1:07-cv-349, 2008 WL 268901 (W.D. Mich. Jan 25, 2008) (attached as **Exhibit 12**).

When interpreting an ERISA plan, the court must give the plan provisions their "plain meaning, in an ordinary and popular sense."  *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).  In applying the plain meaning analysis, the court must give effect to the unambiguous terms of an ERISA plan.  *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 618 (6th Cir. 2002).

In *Trinity Health-Michigan v. Blue Cross Blue Shield of South Carolina*, a healthcare provider filed an ERISA action against a patient's healthcare insurer for medical services provided to the patient.  408 F.Supp.2d at 483.  Prior to receiving treatment from the healthcare provider, the patient signed an "Assignment of Insurance Benefits," which said: "I authorize payment of insurance benefits (including Medicare or Medicaid) to be made directly to [the healthcare provider] . . . ." *Id.*  However, the healthcare insurer's plan contained an anti-assignment clause, which said: "the right to assign any benefits due and payable hereunder is expressly prohibited unless otherwise determined by the [plan sponsor]."  *Id.* at 484.  The U.S. District Court in Western Michigan held that the healthcare provider did not have derivative standing to pursue the lawsuit because the anti-assignment clause was unambiguous and enforceable.  *Id.* at 486.

Likewise, in an extremely similar case, albeit unpublished, *Select Specialty Hosp. v. National City Bank Health & Welfare Plan, et al.*, the court denied derivative standing to a

health care provider and refused to enforce an assignment because the anti-assignment clause in the patient's health plan was unambiguous and enforceable. *Id.* at *3.

In the present case, Pharmacy Matters does not have derivative standing to recover benefits or obtain any relief under ERISA. The Certificate contains an anti-assignment clause that is more direct and specific than the language in both the *Trinity* and *Select Specialty* cases because it specifically prohibits assignment to a provider – *i.e.*, Pharmacy Matters. *See* **Exhibit 2** page 6.1. Because the anti-assignment clause in the BCBSM Certificate is enforceable and unambiguous, Pharmacy Matters is precluded from enforcing the assignment to recover benefits. Therefore, Pharmacy Matters does not have derivative standing to pursue its action against BCBSM.

In addition, because Pharmacy Matters is a participating provider with Wellmark, Plaintiff Luckey would not have been entitled to any reimbursement from BCBSM for covered services provided by Pharmacy Matters. The Certificate expressly states that when obtaining benefits from an out-of -state participating (or panel) provider:

> When you receive covered services from a panel provider, we will pay our approved amount directly to the provider. You are responsible only for the copayments described in this certificate. **Exhibit 2,** page 4.27.

When receiving services from Pharmacy Matters, Plaintiff Luckey has no right to reimbursement that could be assigned - even if the BCBSM Certificate permitted such assignments. Pharmacy Matters can't be assigned a right that Plaintiff Luckey does not possess.

Because Pharmacy Matters has neither direct standing nor derivative standing to pursue this lawsuit, Pharmacy Matters lacks standing to seek any relief under, relating to a claim for benefits; clarification of any rights under the applicable health plan or equitable relief regarding

future benefits or reimbursement from BCBSM. Accordingly, the Court should dismiss the ERISA claims asserted by Plaintiff Pharmacy Matters.

### 3.   Luckey Does Not Have Statutory Standing under ERISA.

When a provider is prohibited from seeking payment from a participant of an ERISA plan, the participant is not entitled to reimbursement from the plan for medical expenses incurred. Accordingly, there is no viable claim for benefits by the participant. In *LaRocca v. Borden, Inc.*, 276 F.3d 22, 25 (1st Cir. 2002), the decedent incurred medical bills of $258,571.42 from a liver transplant performed before his death, and his estate sought reimbursement from the administrator of the decedent's ERISA plan. The plan prohibited benefit payments for "services for which there is no charge or legal obligation to pay." *Id.* at 31. The provider was prevented from seeking payment from the decedent's estate by a statute of limitations. The court held that because the plan "does not cover the bills of someone who does not have to pay them, it bars the relief" sought from the plan by the estate. *Id.*

The same result was reached by the Sixth Circuit in *Perry v. United Food and Commercial Workers*, 64 F.3d 238 (6th Cir. 1995), where the estate of the decedent also sought recovery from an ERISA plan for the medical expenses incurred by the decedent. The decedent's ERISA plan contained a similar provision that prohibited payment by the plan if the employee was not legally obligated to pay the provider. *Id.* at 242. Because the provider's claim against the decedent's estate was time barred, the decedent's estate was not legally obligated to pay, and therefore, the plan was not obligated to reimburse the decedent's estate. *Id.* at 242-243.

In the instant case, Luckey lacks standing to bring suit against BCBSM because he was not legally obligated to pay for the factor treatment. In the *LaRocca* and *Perry* cases, the estate lacked claim for reimbursement because the provider could not assert a claim for relief against

15

the decedent's estate, and the plan language barred reimbursement for claims the participant was not legally obligated to pay. Similarly, Pharmacy Matters is prohibited from seeking reimbursement from Luckey due to the restrictions of its Entity Agreement with Wellmark.

Article VIII, Section 8.2 of Pharmacy Matters provider contract with Wellmark prohibits Pharmacy Matters from billing "Covered Persons for any balance attributable to Covered Services other than deductibles, coinsurance and copayments." Thus, Pharmacy Matters could only seek payment from Wellmark under the provider contract and the BlueCard rules, and Luckey had no personal liability to Pharmacy Matters for the Factor treatment.

Moreover, in his affidavit, Pharmacy Matters owner, Michael Stein, admits that "Pharmacy Matters is only permitted to seek payment from Wellmark and is not permitted to bill Members for any amounts attributable to Covered Services other than deductibles, coinsurance and copayments. Stein Affidavit, **Exhibit5,** ¶5, page 2. It is undisputed that Pharmacy Matters has not filed suit against Luckey seeking payment for the unpaid claims.

Luckey has no contractual or legal obligation to pay Pharmacy Matters. Because Luckey was not obligated to pay Pharmacy Matters, BCBSM is not required to reimburse Luckey for the cost of the disputed claims. Consequently, Luckey has no claim against BCBSM, as the plan's claims administrator, for reimbursement and neither Luckey nor Pharmacy Matters has any standing to sue BCBSM for benefits in this case.

### 4. The Complaint must be dismissed because Plaintiff Luckey cannot establish constitutional standing.

Even assuming that Plaintiffs were able to establish statutory standing under ERISA, - clearly Pharmacy Matters and Luckey can not - Plaintiffs must still establish Article III standing in order to bring a claim against BCBSM. *Central States SE. & SW. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (citing *Raines v.*

16

*Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing")). Because none of the Plaintiffs can demonstrate constitutional standing, their claims against BCBSM must fail.

> The "irreducible constitutional minimum" of standing consists of three elements:

>> First, the plaintiff must have suffered an injury in fact – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations omitted)).  The party invoking the court's jurisdiction bears the burden of establishing these three standing elements.  *Lujan*, 504 U.S. at 561.  In the instant case, Plaintiffs fail to establish even the first element of constitutional standing because none of them have been injured as a result of BCBSM's alleged conduct.  Pharmacy matters is contractually obligated to seek payment exclusively from Wellmark and cannot seek payment from Master Luckey.  Master Luckey received the Factor, has not been denied a benefit and is not legally obligated to pay Pharmacy Matters.

BCBSM recognizes that Plaintiff Pharmacy Matters purports to sue in a derivative capacity on behalf of Master Luckey, pursuant to Section 502(a)(2) of ERISA, § 29 U.S.C. 1132(a).  But this fact does not reduce the burden Plaintiffs bear to establish their own constitutional standing.  *See Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450 (3d Cir. 2003) (plaintiff who claimed that HMO breached its fiduciary duty under ERISA did not

17

establish constitutional standing because she was not personally affected by the alleged breach and therefore did not suffer an injury in fact); *Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002) (dismissing claims for lack of standing where the "loss did not cause actual injury to plaintiff's interest in the plan," and noting that the "limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan"), cert. denied, 537 U.S. 1106 (2003).

Moreover, despite the fact that Pharmacy Matters has not been paid for the disputed claims, Plaintiffs still cannot establish constitutional standing. The second element of constitutional standing requires that a plaintiff prove "a causal connection between the injury and the conduct complained of," which must be "trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Kardules*, 95 F.3d at 1346 (quoting Lujan, 504 U.S. at 560-61). Here, it is clear that Wellmark, as an exercise of its rights under the Entity Agreement with Pharmacy Matters, decided that Pharmacy Matters was not entitled to reimbursement for the disputed claims. BCBSM did not independently refuse payment.

Thus, even if Plaintiffs could allege that they suffered an injury in fact, they still lack constitutional standing because they cannot show that there was a causal connection between this injury and BCBSM's conduct. Plaintiffs have not alleged – and cannot allege – that a causal connection existed between BCBSM and Pharmacy Matters. Hence, the Complaint must be dismissed because Plaintiffs lack Article III standing.[2]

---

[2]    Pharmacy Matters alleges in paragraph 10 of its Complaint that, "the payor on claims submitted by Pharmacy Matters, and which remain unpaid, is BCBS MI." Complaint, **Exhibit 1**, page 5. However, the admission of Michael Stein in his affidavit that Pharmacy Matters must look to Wellmark for payment, contradicts the

Finally, to satisfy the case or controversy requirement of Article III of the Constitution, an actual controversy must exist at all stages of review, and not simply on the date the action is initiated." *Id.* (quoting *Rettig v. Kent City School Dist.,* 788 F.2d 328, 330 (6th Cir.), *cert. denied,* 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 711 (1986)).  A case becomes moot when the requested relief is granted or no live controversy remains. *Id.*

Here, there is no live controversy remaining between BCBSM and the Plaintiffs. Therefore, any claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) is moot.

### 5. Luckey's lack of standing destroys the asserted derivative standing of Pharmacy Matters.

Even if this Court finds that Luckey's assignment of rights to Pharmacy Matters is enforceable, despite the anti-assignment clause in his BCBSM certificate, Pharmacy Matters would still lack derivative standing because Luckey lacks standing to sue BCBSM.  It is well established that an assignee may bring a claim by stepping into the shoes of the assignor.  *See N.I.P.P. Royal Oak, LLC v. City of Royal Oak*, 470 F. Supp. 2d 784, 788 (E.D. Mich. 2007) (citing *Vermont Agency of Natural Res's v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000) ("[A]dequate basis for the . . . suit . . . is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor.")).  Furthermore, "[t]o sue derivatively, the provider must have obtained a written assignment of claims from a *patient with standing to sue under ERISA*."  *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) (emphasis added).

allegations in the Complain and evidences conflicting and positions in different venues.  Such conflicts are inevitable when engaged in forum shopping.

Accordingly, Pharmacy Matters does not have derivative standing to sue BCBSM.  When applying general assignment laws, it is clear that Pharmacy Matters steps into Luckey's shoes when bringing a lawsuit against BCBSM.  Because Luckey does not have standing to bring a claim, Pharmacy Matters, as an assignee of Luckey, does not have standing to bring a claim.

**6.**      **Plaintiffs do not have standing to seek declaratory or equitable relief since Plaintiff Luckey's current health plan is not covered by ERISA.**

In addition to a claim for benefits and declaratory relief under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Plaintiffs also seek equitable relief pursuant to Section 502(a)(3), 29 U.S.C. § 1132(a)(3).  In order to obtain such relief under ERISA, the moving party must be a participant or beneficiary of an ERISA plan.  At the present time, Plaintiff Luckey is not a participant or beneficiary of a health plan covered by ERISA.

ERISA, 29 U.S.C. § 1002(1) defines an employee welfare plan as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter *established or maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise.

Currently, Plaintiff Luckey is covered by a non group individual policy of insurance.  It is not established or maintained by an employer.  Therefore, Plaintiff Luckey is no longer a participant in an ERISA health plan.

Moreover, any claim for declaratory and injunctive or equitable relief is moot since Plaintiffs have failed to allege that BCBSM is currently denying claims for services rendered to Luckey or submitted by Pharmacy Matters.  Since January 2011, Master Luckey's factor has been supplied by a Michigan based provider.  Since Master Luckey is no longer covered by the

20

same BCBSM Certificate and is no longer receiving Factor from Pharmacy Matters, there is no current controversy or pending denial of benefits that has been or could be alleged. Master Luckey has no standing to assert a claim for any relief under Section 502, 29 U.S.C. § 1132, which provides for injunctive or equitable relief. Any derivative claims by Pharmacy Matters also fail and should be dismissed.

### B.   The Complaint should be dismissed because the Plaintiff Pharmacy Matters has a pending case in Iowa state court involving the same disputed claims.

Dismissal is warranted under the *Colorado River* doctrine. Under that doctrine, a federal court may abstain from deciding a federal court action in deference to a pending state proceeding in certain extraordinary circumstances. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Colorado River* abstention is a doctrine of judicial economy which derives from principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817 (citations omitted). Its purpose is "to avoid duplicative litigation." *Colorado River,* 424 U.S. at 817. *Colorado River* abstention, therefore, is akin to a first-to-file rule for actions that are first filed in state court and then filed in federal court. *Colorado River,* 424 U.S. at 817-818. However, although the doctrine exists, the Supreme Court has cautioned federal courts that they should abstain only in the face of concurrent state proceedings in exceptional cases due to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817. Therefore, federal courts should abstain only in exceptional circumstances after considering several factors and not just whether the state court action was filed first. *Colorado River,* 424 U.S. at 817.

Before considering the *Colorado River* abstention factors, the Court must first determine whether the state and federal actions in question are parallel actions. The two proceedings need

21

only be " 'substantially similar,' " and not exactly parallel.  *Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir.1998) (quoting *Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989)). In this case, Plaintiffs seek to compel BCBSM to pay for covered services that remain unpaid because of a contractual dispute between Pharmacy Matters and Wellmark.  In the Iowa state case, plaintiff Pharmacy Matters is suing Wellmark to recover payment for the same claims at issue in the federal case pending before this court.  All of the claims are substantially similar because they all stem from whether Pharmacy Matters is entitled to payment under the Entity Agreement with Wellmark.  Therefore, the state court case is parallel to the case *sub judice.*

Having found that the state action is a parallel proceeding to the lawsuit filed here, the Court must perform an analysis of the relevant factors.  In *Colorado River,* the Supreme Court declared that, in deciding whether to defer to the concurrent jurisdiction of a state court, a district court must consider such factors as (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained.  *See Colorado River,* 424 U.S. at 818-19; *Romine v. Compuserve Corp.,* 160 F.3d 337, 340-341 (6th Cir.1998).  In subsequent cases, the Supreme Court has identified at least four additional factors to be weighed in the balance.  These include: (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *See Romine,* 160 F.3d at 341 (describing cases).  However, those factors do not comprise a mechanical checklist and, instead, require "a careful balancing of the important factors as they apply in a give case" depending on the particular facts at hand.  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 15-16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

22

With respect to the first factor, the contract between Pharmacy Matters and Wellmark originated in Iowa and, therefore, that factor weighs in favor of abstention.  Regarding the second factor, while the federal forum in Detroit is more convenient for Plaintiff Luckey and BCBSM, it is less convenient to the Pharmacy Matters.  It is anticipated that many witnesses from Iowa will be needed to testify in the federal case pending in Detroit.

The third factor requires the Court to consider whether hearing this case will create piecemeal litigation.  *Romine,* 160 at 341.  "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results."  *Romine,* 160 F.3d at 341 (citing *LaDuke v. Burlington Northern R.R. Co.,* 879 F.2d 1556, 1560 (7th Cir.1989)).  Moreover:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident.  But judicial economy is not the only value that is placed in jeopardy.  The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Romine,* 160 F.3d at 341 (quoting *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 694 (7th Cir.1985)).  Here, while Plaintiffs have postured the federal case as one based on violations of ERISA, failure to abstain will result likely in piecemeal litigation with the result potentially being inconsistent judgments regarding whether Pharmacy Matters is entitled to payment from Wellmark for the disputed claims.

Fourth, the Iowa state case was filed by Pharmacy Matters on May 4, 2009 while Plaintiffs did not commence this federal action until April 8, 2011.  With respect to the fifth factor, the real source of governing law in this case is the state law regarding contract notwithstanding the face that Plaintiffs have alleged an ERISA claim.  The sixth and seventh

23

factors weigh against abstention because the Iowa state court action can adequately protect the rights of Pharmacy Matters (As discussed above, Plaintiff Luckey really has no rights to protect.) and because the Iowa state court action has progressed farther than this action.  Finally, with respect to the eighth factor, while the Iowa state court has jurisdiction over Pharmacy Matters' breach of contract claim against Wellmark, this court has concurrent jurisdiction over Plaintiff Luckey's alleged ERISA claims.

Considering all of these factors together and the weight in favor of maintaining jurisdiction, *Cone,* 460 U.S. at 16, 103 S.Ct. 927, 74 L.Ed.2d 765, the *Colorado River* abstention should apply in this case.  The Iowa state court obtained jurisdiction before this Court, and it case has progressed farther.  Moreover, there is a large risk of piecemeal litigation should this Court exercise jurisdiction and exercising jurisdiction appears to be unnecessary as the state court is capable of Pharmacy Matters' contract arguments and protecting its rights.  Since there are no ERISA rights to protect in this case, the court need not concern itself with protecting the rights of Plaintiff Luckey.[3]

---

[3]    A similar conclusion was reached by a federal court in Florida where Pharmacy Matters filed a similar suit against Blue Cross Blue Shield of Florida - also invoking ERISA jurisdiction while essentially seeking payment from BCBS Florida for unpaid claims that were also the subject of the Iowa lawsuit against Wellmark.  *See* **Exhibit 13,** Order Denying Motion to Strike to Disqualify Counsel and Granting Stay in This Case,  *Chad Brown, Eric Lowe and T. Zenon Pharmaceuticals, LLC (d/b/a Pharmacy Matters) v. Blue Cross Blue Shield of Florida, Inc,* Case No 11-80390 -CIV.  Judge Donald M. Middlebrooks issued a stay in the Florida federal case because of the pendency of the Iowa state court proceedings.  Here, a stay is unnecessary as no ERISA claims are properly before this court.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the court grant its motion to dismiss Plaintiffs' Complaint.

Respectfully Submitted,

/s/  Leo A. Nouhan
Leo A. Nouhan (P30763)
Jesse A. Zapczynski (P74658)

Dated:  October 26, 2011

Assistant General Counsel
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 E. Lafayette Blvd., Suite 1925
Detroit Michigan 48226
Telephone: (313) 983-2554
Email: lnouhan@bcbsm.com
and jzapczynski@bcbsm.com

Attorneys for Defendant Blue Cross Blue Shield of Michigan

## PROOF OF SERVICE

      I hereby certify that on October 26, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will notify all counsel of record.

                         Respectfully Submitted,

                         /s/  Leo A. Nouhan
                         Leo A. Nouhan (P30763)
                         Assistant General Counsel
                         BLUE CROSS BLUE SHIELD OF MICHIGAN
                         600 E. Lafayette Blvd., Suite 1925
                         Detroit Michigan 48226
                         Telephone: (313) 983-2554
                         Email: lnouhan@bcbsm.com